# 24-3042-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



K. W., ON BEHALF OF HIMSELF AND HIS INFANT CHILD, K.A.,

*Plaintiff-Appellant,*

*v.*

THE CITY OF NEW YORK, AMAR MOODY,
CHILDREN'S AID SOCIETY, BRIAN GOMEZ,

*Defendants-Appellees.*

*On Appeal from the United States District Court
for the Southern District of New York*

## BRIEF FOR DEFENDANTS-APPELLEES
## THE CITY OF NEW YORK AND AMAR MOODY

Sheryl A. Sanford
BLACK MARJIEH & SANFORD LLP
*Attorneys for Defendants-Appellees
  The City of New York and Amar Moody*
100 Clearbrook Road, Suite 345
Elmsford, New York 10523
914-704-4400


(212) 719-0990
appeals@phpny.com

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

JURISDICTIONAL STATEMENT .........................................................1

PRELIMINARY STATEMENT .............................................................1

COUNTER-QUESTIONS PRESENTED ..................................................2

STATEMENT OF FACTS .....................................................................3

UNDERLYING FACTS/BACKGROUND ..................................................3

     Procedural History ......................................................................4

STANDARD OF REVIEW ....................................................................8

SUMMARY OF ARGUMENT ...............................................................10

ARGUMENT .....................................................................................12

     POINT I

     THE DISTRICT COURT PROPERLY TOOK JUDICIAL
     NOTICE OF, AND CONSIDERED, THE FAMILY COURT
     RECORDS .................................................................................12

          A.  The Family Court documents were not utilized for the
              truth of the matter asserted in the other litigation, but
              rather to establish the facts of such litigation and related
              filings ...............................................................................12

          B.  The Family Court documents were incorporated by
              reference and relied upon in drafting of the complaint .......................14

          C.  Because The Family Court Records Were Integral To
              Plaintiff's Complaint, The District Court Properly
              Relied On These Records In Determining The Motion
              For Summary Judgment .......................................................15

POINT II

THE DISTRICT COURT PROPERLY DISMISSED
PLAINTIFF'S PROCEDURAL DUE PROCESS
CLAIM BECAUSE HE FAILED TO REFUTE THE
PRIMA FACIE SHOWING THAT THERE WERE
EMERGENT CIRCUMSTANCES JUSTIFYING THE
CHILD'S REMOVAL ........................................................................17

POINT III

THE DISTRICT COURT PROPERLY DISMISSED
PLAINTIFF'S FOURTH AMENDMENT CLAIM
BECAUSE PLAINTIFF FAILED TO REBUT THE
PRESUMPTION OF PROBABLE CAUSE CREATED
BY THE ORDER OF REMOVAL ....................................................18

POINT IV

AMAR MOODY WAS PROPERLY GRANTED
QUALIFIED IMMUNITY ................................................................21

    A.   The District Court Properly Granted Amar Moody
        Qualified Immunity as his Actions were Objectively
        Reasonable........................................................................................21

POINT V

THE DISTRICT COURT PROPERLY DISMISSED
THE PROCEDURAL DUE PROCESS CLAIM AS
TIME-BARRED ...............................................................................23

CONCLUSION .............................................................................................24

CERTIFICATE OF COMPLIANCE ...........................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................9, 10

*ATSI Communs., Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ...............................................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................9, 10

*Biro v. Condé Nast*,
807 F.3d 541 (2d Cir. 2015) ...............................................................8

*Boddie v. Schnieder*,
105 F.3d 857 (2d Cir. 1997) ...............................................................9

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ...............................................................15

*Conley v. Gibson*,
355 U.S. 41 (1957).......................................................................9

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010) ...............................................................15

*Eagleston v. Guido*,
41 F.3d 865 (2d Cir. 1994) ...............................................................24

*Estate of Keenan v. Hoffman-Rosenfeld*,
833 Fed. Appx. 489 (2d Cir. 2020)......................................................22

*Estiverne v. Esernio-Jessen*,
833 F.Supp.2d 356 (E.D.N.Y 2011) ....................................................19

*Fahs Constr. Grp., Inc. v. Gray*,
725 F.3d 289 (2d Cir. 2013) ...............................................................23

*Garcia v. Hartford Police Dep't*,
706 F.3d 120 (2d Cir. 2013) ....................................................................10

*Goel v. Bunge, Ltd.*,
820 F.3d 554 (2d Cir. 2016) ....................................................................16

*Goldman v. Belden*,
754 F.2d 1059 (2d Cir. 1985) ....................................................................9

*Green v. United States*,
13 F.3d 577 (2d Cir. 1994) ....................................................................19

*Henson v. CSC Credit Services*,
29 F.3d 280 (7th Cir. 1993) ....................................................................9

*Hogan v. Fischer*,
738 F.3d 509 (2d Cir. 2013) ....................................................................23

*Hurlman v. Rice*,
927 F.2d 74 (2d Cir. 1991) ....................................................................17

*Int'l Audiotext Network, Inc. v. American Tel. & Tel. Co*,
62 F.3d 69 (2d Cir. 1995) ....................................................................8

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
146 F.3d 66 (2d Cir. 1998) ....................................................................12

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991) ....................................................................13

*Leecan v. Lopes*,
893 F.2d 1434 (2d Cir. 1990) ....................................................................10

*Lennon v. Miller*,
66 F.3d 416 (2d Cir. 1995) ....................................................................22

*Lucente v. Cty. Of Suffolk*,
980 F.3d 284 (2d Cir. 2020) ....................................................................23

*Mangiafico v. Blumenthal*,
471 F.3d 391 (2d Cir. 2006) ....................................................................15

iv

*Mhany Mgmt. v. Cnty. Of Nassau*,
   819 F.3d 581 (2d Cir. 2016) ...................................................................20

*Nunes v. Cable News Network, Inc.*,
   31 F.4th 135 (2d Cir. 2022) ....................................................................8

*Ogunkoya v Cty. Of Monroe*,
   2020 U.S. Dist. LEXIS 118580 (2d Cir. 2020) ......................................21

*P.P. v. City of New York*,
   No. 13 CIV. 5049 CM FM, 2014 WL 4704800 (S.D.N.Y. 2014).....................22

*Pani v. Empire Blue Cross Blue Shield*,
   152 F.3d 67 (2d Cir. 1998) ......................................................................9

*Pearl v. City of Long Beach*,
   296 F.3d 76 (2d Cir. 2002) ....................................................................24

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007) ..................................................................13

*Smith v. Tkach*,
   844 F. App'x 414 (2d Cir. 2021) ............................................................19

*Soares v. Connecticut*,
   8 F.3d 917 (2d Cir. 1993) ......................................................................22

*Southerland v. City of New York*,
   680 F.3d 127 (2d Cir. 2011) ..................................................................17

*Tenenbaum v. Williams*,
   193 F.3d 581 (2d Cir. 1999) .......................................................17, 18, 19

*United States ex rel. Foreman v. Aecom*,
   19 F.4th 85 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2679 (2022) .......................8

*United States v. Provident Nat'l Bank*,
   259 F. Supp. 373 (E.D. Pa. 1966)............................................................9

*Van Emrik v. Chemung County Dep't of Soc. Servs.*,
   911 F.2d 863 (2d Cir. 1990) ..................................................................22

v

*Williams v. Savory*,
    87 F. Supp. 3d 437 (S.D.N.Y. 2015) ...................................................24

*Young v. County of Fulton*,
    160 F.3d 899 (2d Cir. 1998) .............................................................21

**Statutes**

28 U.S.C. § 1291 ...............................................................................1

28 U.S.C. § 1331 ...............................................................................1

28 U.S.C. § 1367 ...............................................................................1

42 U.S. Code § 1983 .............................................................21, 22, 23, 24

Family Court Act § 1017(a) ...............................................................20

Family Court Act § 1017(c)(i) ...........................................................20

**Rules**

Rule 8 .............................................................................................10

Rule 12(b)(6) ..............................................................................8, 9, 15

**Constitutional Provisions**

Constitution Article I, § 6 ..................................................................5

Constitution Article I, § 11 ................................................................5

Fourth Amendment .....................................................................*passim*

vi

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over this action pursuant to 28 U.S.C. § 1331, and 28 U.S.C. § 1367. This Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291.

The District Court entered Judgment on July 23, 2024. [SPA.47]. Plaintiff-Appellant K.W. on behalf of himself and his infant child, K.A., timely filed a Notice of Appeal from the Judgment and the Order on which it is based on November 8, 2024 [JA.144].

## PRELIMINARY STATEMENT

This is an action in which Plaintiff-Appellant alleged that the City of New York, Amar Moody, a caseworker for the City's Administration for Children's Services (ACS), the Children's Aid Society, and Brian Gomez separated him from his child for over two years without due process. The United States District Court for the Southern District Court of New York (Buchwald, J.) granted dismissal as to the City and Moody (collectively, the City) on all claims.

As is relevant here, Plaintiff-Appellant appeals arguing that the District Court erred (i) in considering documents outside the complaint; (ii) in dismissing his Fourth Amendment claim alleging an unreasonable seizure; and (iii) in dismissing his due process claims. This Court should affirm.

1

The District Court properly concluded that Plaintiff-Appellant failed to state a cause of action on any of his claims by correctly taking judicial notice of the Family Court records in a prior neglect proceeding against the child's mother, which provided the relevant background as to plaintiff's inability to protect the child from harm. Those records clearly showed that ACS followed the proper steps, ultimately reasonably concluding that the child was at risk of harm, thereby warranting his emergency removal from the home that he shared with plaintiff and his mother and thus comporting with due process.

Plaintiff failed to rebut the presumption of probable cause that was created by the Family Court's removal order, by failing to show the petition for removal was intentionally or recklessly false, thereby undermining his allegation that his Fourth Amendment rights were violated. Finally, the District Court also correctly applied qualified immunity to caseworker Moody, as it was reasonable for him to remove the child under such emergency circumstances.

## COUNTER-QUESTIONS PRESENTED

1. Whether the District Court properly took judicial notice of court records of the Family Court proceedings in support of the City's motion to dismiss?

2. Whether the District Court correctly considered Family Court records as they were integral to plaintiff's amended complaint and referenced in plaintiff's motion papers?

2

3. Whether the District Court's dismissal of the plaintiff's Fourth Amendment unreasonable seizure claim be affirmed for failing to provide sufficient evidence of a constitutional violation?

4. Whether the District Court's dismissal of plaintiff's procedural due process claim be affirmed for failing to present sufficient evidence of a constitutional violation by City defendants?

5. Whether the District Court's order dismissing plaintiff's claim that caseworker Moody was not entitled to qualified immunity should be affirmed because plaintiff failed to present evidence sufficient to demonstrate that Moody's conduct was objectively unreasonable?

## STATEMENT OF FACTS

### Underlying Facts/Background

On March 2, 2017, infant K.A. was born [JA.20]. On March 8, 2017, ACS filed a petition in Family Court alleging against the child's mother neglected him. [JA.148]. The petition noted that plaintiff was or alleged to be the child's father [JA.147]. The petition explained that emergency removal of the child was necessary to prevent harm to the child [JA.150-151]. The petition also cited seven instances in which the mother allegedly derivatively neglected her other children [JA.150-151].

That same day, the child was removed from the custody of both his mother and father pursuant to a removal order signed by Honorable Judge Jane Pearl of New

3

York County Family Court [JA.156-157]. No non-respondent parent was identified by the Judge on that order [JA.156]. A determination that no non-respondent parent was suitable to take custody of the child pending the Family Court proceedings is a decision left to the discretion of the judge, and in this matter the box indicating there was no suitable non-respondent parent was empty. Multiple permanency hearings from April 2017 to November 2019 were held to determine the next steps as to whether the child would stay in foster care and whether reunification or adoption was the goal [JA. 158-160, 236-249, 257-266, 270-271. In September 2019, the Children's Aid Society submitted a letter to the court discussing their concerns that plaintiff impermissibly allowed K.A.'s birth mother to visit during plaintiff's unsupervised time and the state of the child upon his return from the unsupervised visits [JA.254]. In August 2018, plaintiff- petitioned for sole custody of the child and, two years later, a final order was issued giving plaintiff full legal and physical custody of the child [JA.270-271, 273-274].

**Procedural History**

In October 2022, plaintiff filed a Summons and Verified Complaint in the Southern District of New York against the City, Children's Aid Society, Amar Moody, and Brian Gomez [JA.3]. The Complaint alleged (1) interference with the right to intimate association; (2) malicious prosecution; (3) negligence; (4) state malicious prosecution; and (5) gender and race discrimination in violation of the

NYC Human Rights Law. On April 21, 2023, Children's Aid Society filed their answer.

In May 2023, plaintiff filed a First Amended Complaint alleging (1) interference with right to intimate association; (2) federal false arrest against Moody; (3) racial discrimination under the 14th amendment against the City; (4) racial discrimination, in violation of the New York State Constitution Art. I, § 11, against the City; (5) a procedural due process violation under the 14th amendment against all defendants; (6) a procedural due process violation of the State Constitution Art. I § 6, against all defendants; (7) gender discrimination in violation of the NYC Human Rights law against all defendants; (8) racial discrimination in violation of the NYC Human Rights law against all defendants; and (9) a procedural due process violation of the 14th Amendment against Moody [JA.17-47].

In September 2023, the City moved to dismiss asserting that plaintiff's claims for interference in his right to intimate association and procedural due process were time barred [JA.58-85]. The City also argued that the federal false arrest and procedural due process claims failed to state a claim and that the allegations of gender and racial discrimination were conclusory [JA.58-85]. As to Moody, the City maintained that he was entitled to qualified immunity as a government official performing a discretionary function [JA.79-85].

In opposition, plaintiff conceded that the right to intimate association was governed by a three-year statute of limitations, however, he argued that the limitations period began to run when the child was returned to his father's care [JA.105-109]. Because the child was not returned to his father's care until 2020, plaintiff argued that that claim was not time-barred. Plaintiff also argued that: (i) ACS treated him differently because he was a man and that had he been the mother, ACS would have treated him better [JA.115]; and (ii) the trope of an "absent black father must have played a role in the Defendants decision" to keep the child away from him [JA.116]. After the City replied, the District Court ordered the City to file the underlying Family Court documents under seal to protect the child's privacy so that the Court may take judicial notice of them [JA.138]. The City complied [JA.139].

The District Court ruled against plaintiff's assertions that the statute of limitations timing begins once the false imprisonment ends, finding that plaintiff is time-barred from bringing suit [SPA.17-20]. The District Court further found plaintiff's continuing violation doctrine argument unconvincing as plaintiff's argument hinges on one specific act, the removal of the child from his custody rather than a pattern of acts [SPA.20-21]. As to Plaintiff's procedural due process claim the District Court found that the City Defendants demonstrated emergent circumstances that warranted removal without a court order and that seizure after the court order was warranted

6

due to inadequate housing, positive testing of drugs and the need for parenting classes prior to being reunified with the child [SPA.24-26]. Ultimately, the District Court found that plaintiff's allegations of a procedural due process claim, specifically that City defendants removed child without emergency was unsupported [SPA.27]. The District Court found that plaintiff failed to provide factual allegations necessary to establish both a federal and state claim discrimination [SPA.38-39]. Last, the court found that Moody's acts were objectively reasonable and within the scope of his employment [SPA.42-44]. Therefore, the District Court granted Moody qualified immunity [SPA.44].

Thereafter, the District Court granted the City's motion and dismissed all claims against it. The only remaining claims were those asserted against the non-profit defendants, Children's Aid Society and Brian Gomez, who elected to answer the complaint rather than move for dismissal [SPA.46]. However, the court gave plaintiff 30 days to show cause as to why the claims against the non-profit defendants should not be dismissed [SPA.46-47]. The court highlighted that there was no indication that any decision of the Family Court was influenced by false or misleading information [SPA.46].

Eventually, the District Court dismissed all claims against the non-profit defendants, and judgment was thereafter entered dismissing the case as against all defendants [SPA 50-52]. Plaintiff appeals [JA.144-145].

7

## STANDARD OF REVIEW

A district court's grant of a 12(b)(6) motion is subject to a *de novo* review. *Nunes v. Cable News Network, Inc.*, 31 F.4th 135, 140 (2d Cir. 2022). While it is true that a court must assume "the truth of facts alleged in the complaint . . . drawing all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), a court may also consider documents incorporated by reference in the complaint or those documents that are "integral to the complaint." *United States ex rel. Foreman v. Aecom*, 19 F.4th 85, 106 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2679 (2022) (explaining document is "considered integral to the complaint" where the plaintiff relies "on the terms and effect of a document in drafting the complaint"). This is specifically adhered to by the District Court wherein the lower court references that the family court records are "integral" to the claims [SPA.15]. In fact, these family court records are referenced throughout the complaint which is why the District Court also notes that these records may be considered "alongside the operative complaint" [SPA.15] and that the family court records, which support the basis for the claims, "fill in the glaring gaps left open by plaintiff's complaint" and serve as the basis for the factual background. [SPA.3]

Indeed, a complaint is deemed to include any written instrument attached to it as an exhibit, or any statements or documents incorporated in it by reference. *Int'l Audiotext Network, Inc. v. American Tel. & Tel. Co*, 62 F.3d 69, 72 (2d Cir. 1995).

In deciding whether to dismiss a complaint under Rule 12(b)(6), a court may also consider matters of public record. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) (noting that it is well-established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure); *see also Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1993); *United States v. Provident Nat'l Bank*, 259 F. Supp. 373, 376 (E.D. Pa. 1966). On a motion for judgment on the pleadings, defendants must show that plaintiff is not entitled to relief under any set of facts that could be proved consistent with the allegations. *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). To survive the motion, a plaintiff must show a cognizable claim and allege facts that, if true, would support such a claim. *Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir. 1997).

To survive dismissal, the pleadings must contain "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), *i.e.*, to allow the court to reasonably infer that defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As such, a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan*, 478 U.S. at 286). Where a plaintiff's "well-pleaded facts do not permit the court to infer more

9

than a mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678 (internal citations and quotations omitted) (noting, although the Rule 8 pleading standard "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and explaining complaint is insufficient "if it tenders naked assertion[s] devoid of further factual enhancement."); *see also ATSI Communs., Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly,* 550 U.S. at 555) (explaining to "survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'").

Finally, the court is "free to affirm an appealed decision on any ground which finds support in the record, regardless of the ground upon which the trial court relied." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 130 (2d Cir. 2013) (*per curiam)* (quoting *Leecan v. Lopes*, 893 F.2d 1434, 1439 (2d Cir. 1990)).

## SUMMARY OF ARGUMENT

The District Court properly granted the City's motion to dismiss. First, the court correctly took judicial notice of the Family Court documents to establish the events of the neglect proceedings against the child's mother. Even if the District Court improperly took judicial notice, the extrinsic documents still should have been considered because they were integral to plaintiff's complaint. Throughout his

complaint, plaintiff quoted and referenced the Family Court documents, and the court's review of them was therefore crucial. [JA.24-26, 28-32]. In that regard, the Family Court records showed that there were serious concerns regarding plaintiff's ability to keep the child away from his mother and that the Court continued to work with plaintiff to ensure that, once he was given custody of the child, the child would be safe and taken care of. [JA.246, 249, 255-256, 257-265]

The District Court properly dismissed the procedural due process claim as the removal of the child under emergent circumstances was reasonable. Given that the child's mother had a long history of neglect, failed to abide by court orders, and struggled both mentally and with drug addiction, it was deemed necessary to remove the child, on an emergency basis, from the home he shared with his mother. [JA.150-151, 189, 198, 259] The same exact date of removal, a hearing was conducted, and an order was issued that same day placing the child into state custody [JA.155-157]. In light of the emergent circumstances signed off by the Family Court after a hearing, the removal of the child was lawful and did not violate due process. [JA.150-157]

The District Court also properly dismissed plaintiff's unreasonable seizure cause of action as he failed to sufficiently rebut the presumption of probable cause. Plaintiff asserts that the neglect petition was either intentionally or recklessly false because it failed to add information surrounding plaintiff's fitness and willingness to take care of the child. But this argument should not be considered by this Court,

11

as it was raised for the first time on appeal. Even if considered by this Court, the argument fails to rebut the presumption of probable cause as it fails to show how the petition itself was either intentionally or recklessly false.

Finally, the District Court properly found that the claims against Moody should be dismissed based on qualified immunity. In reaching that conclusion, the court was required to determine whether officers of reasonable competence could disagree on the legality of Moody's removal of the child. Given the information Moody had at the time of his investigation, the court correctly determined that officers of reasonable competence would not disagree that removal was necessary to protect the child's safety and that, therefore, he was entitled to qualified immunity.

## ARGUMENT

### POINT I

### THE DISTRICT COURT PROPERLY TOOK JUDICIAL NOTICE OF, AND CONSIDERED, THE FAMILY COURT RECORDS

**A.    The Family Court documents were not utilized for the truth of the matter asserted in the other litigation, but rather to establish the facts of such litigation and related filings.**

It is well settled that "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998). Courts may take judicial notices of judgments and filings submitted to another court so long

as the purpose is to determine the scope of what was previously litigated, and not as evidence of the events discussed. Before judicial notice is taken, "a District Court must consider whether 'no serious question as to [its] authenticity can exist." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). This Court held in *Roth* that when the complaint alleges a particular document made certain representations, it is appropriate, in considering a motion to dismiss, to examine the document to confirm whether the representations were in fact made. *Id*. Such use of extrinsic evidence is only to determine what the document stated, not to prove the truth of the contents therein. *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir. 1991).

Here, the District Court correctly took judicial notice of the Family Court records [JA.139]. Because there were neglect proceedings involving the child, the court sent written correspondence to counsel for all parties explaining that, to resolve the motion to dismiss, she would be taking judicial notice of the court records in the Family Court proceedings [JA.139] This was absolutely necessary not to "prove the truth of their contents" but rather only to "determine what the documents stated." *Krammer*, 937 F.2d at 774.

Indeed, the District Court only referenced the procedural history of the Family Court matter by pointing out the chronology of the events, including ACS's removal of the child and its filing a of the neglect petition with Family Court; the preliminary hearing; and then the order of neglect [SPA.24-25]. The court also noted the steps

13

ACS took to remove the child and what it considered when making that decision [SPA.25-27, 33-35]. The court did not utilize the documents to determine whether plaintiff was the father, whether he was fit to take care of the child, or whether he was complying with court orders. Rather, the court relied on these documents simply to confirm why the child was removed, what steps were taken throughout the permanency hearings, and what ultimately led to the child being placed in his father's care [SPA.3].

### B. The Family Court documents were incorporated by reference and relied upon in drafting of the complaint

In his amended complaint, plaintiff alleged that false statements or misrepresentations were made to the Family Court [JA.24, 28] In particular, plaintiff alleged that a report made by co-defendant employee Gomez claimed that the petition was false because the reasoning for removing the child was incomplete on the family court petition [JA.28]. Further, plaintiff alleged that the December 2017 report made by co-defendant Gomez falsely referred to plaintiff as the "alleged father." [JA.28]. Due to these assertions, plaintiff urges the court to find that the documents were improperly relied upon because they contain false statements and misrepresentations and should not have been considered.

The District Court properly looked to the petition and reports—specifically referenced by plaintiff in his complaint—to determine what they actually stated. In so doing, the Court determined that there were multiple reasons that plaintiff did not

14

dispute that gave rise to concerns for K.A.'s safety and that the Family Court was not influenced by any false or misleading information [SPA.25-26]. Thus, the District Court properly took judicial notice of the Family Court records to provide background as to what occurred in the neglect proceedings.

**C. Because The Family Court Records Were Integral To Plaintiff's Complaint, The District Court Properly Relied On These Records In Determining The Motion For Summary Judgment.**

Again, "[i]n considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a District Court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002). Where a document is not referenced in the complaint, the court may "nevertheless consider it where the complaint relies heavily upon its terms and effects, which renders the document to be integral to the complaint" *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002).

Here, as noted above, the Family Court documents were clearly integral to the complaint because plaintiffs repeatedly referenced the contents of the petition, permanency hearing reports, and Family Court Orders to support his allegations. While courts have held that merely mentioning a document or offering limited

quotations does not make a document integral this Court has held that an exception to this general rule is recognized where, as here, the incorporated documentation, "when read in its entirety, would undermine the legitimacy of the plaintiff's claim" *Goel v. Bunge*, Ltd., 820 F.3d 554, 556 (2d Cir. 2016).

Here, plaintiff alleged that the child was improperly removed from his care because no emergency circumstances existed because he was able to care for the child [JA.39-40]. However, the Family Court documentation, including the petition, the permanency hearing reports, and the 2019 letter from Children's Aid Society Petition provided the necessary background information to undermine plaintiff's assertions and demonstrate that ACS did not violate plaintiff's constitutional rights [JA.146, 155, 158, 161, 254, 257]. Indeed, those records showed that (1) the child's mother had an extensive history of neglect; (2) the father was not in a position to keep the child away from his mother; (3) plaintiff did not abide by court orders to have a visit without the presence of the mother; and (4) there were other concerns that provided the Family Court with information to continue to separate plaintiff and child until plaintiff was deemed fit [JA.254, 257].

Given the allegations in complaint referencing the removal procedures, the District Court properly relied upon that extrinsic evidence that was integral to the complaint, formed the basis for the claims, and was cited throughout the pleadings.

16

## POINT II

## THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM  BECAUSE HE FAILED TO REFUTE THE PRIMA FACIE SHOWING THAT THERE WERE EMERGENT CIRCUMSTANCES JUSTIFYING THE CHILD'S REMOVAL

As a general rule, "before parents may be deprived of the care, custody, or management of their children without their consent, due process – ordinarily a court proceeding resulting in an order permitting removal – must be accorded to them." *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999); *Southerland v. City of New York*, 680 F.3d 127, 149 (2d Cir. 2011).

In an emergency circumstance, a child "may be taken into custody by a responsible State official without court authorization or parental consent." *Tenenbaum*, 193 F.3d at 593. The government must offer "objectively reasonable evidence that harm was imminent" *Id*. at 594.  This Court has not set out an exhaustive list which would constitute imminent danger to justify an emergency removal under federal law. *Southerland*, 680 F.3d at 149. But this Court has held that an emergency exists when there is "an immediate threat to the safety of the child or where the child is left bereft of care and supervision or where there is evidence of serious ongoing abuse and officials have reason to fear imminent recurrence" *Hurlman v. Rice*, 927 F.2d 74, 80 (2d Cir. 1991); *Southerland*, 680 F.3d at 149. Here, the Family Court determined, after a hearing, that there was an immediate threat to the child to warrant removal [JA.155]. It was further established that plaintiff was

17

living with the child's mother, such that placing the child with his father would still be an immediate threat to the child's safety [JA.147, 155].

Given these circumstances, there was no "reasonable time consistent with the safety of the child to obtain a judicial order," *Tenenbaum,* 193 F.3d at 596, thereby warranting the emergency removal of the child. Indeed, the District Court looked to the Family Court documents that showed that the child's mother had an extensive ACS history, untreated mental health illness, failed to comply with court orders, and had drug addiction, all of which justified the immediate removal of the child from the home [JA.146, 161]. Provided with such facts, the District Court properly concluded that there was an objectively reasonable basis for believing that a threat to the child's health was imminent and thus correctly held that plaintiff suffered no procedural due process violation.

## POINT III

### THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFF'S FOURTH AMENDMENT CLAIM BECAUSE PLAINTIFF FAILED TO REBUT THE PRESUMPTION OF PROBABLE CAUSE CREATED BY THE ORDER OF REMOVAL

This Court opined that where a person of reasonable caution would believe that a child would be subject to danger if not removed before a court order is obtained, the exigent circumstances permit the removal of a child without the equivalent of a warrant and without parental consent thereby comporting with Fourth Amendment requirements. *Tenenbaum ,* 193 F.3d at 605. Here, there was no court

18

order and no parental consent to remove the child, but there were exigent circumstances that justified the removal of the child to ensure his safety.

To succeed on a claim for unlawful seizure in violation of the Fourth Amendment, "a plaintiff must show that the seizure was unreasonable – i.e., that it was not supported by probable cause." *Smith v. Tkach*, 844 F. App'x 414, 416 (2d Cir. 2021); *see Tenenbaum*, 193 F.3d at 593. Once an order is obtained, the entry of said order "creates a presumption of probable cause," which may be rebutted by evidence that "caseworkers in their petition, ma[de] intentionally or recklessly false statements that are necessary to a court's finding of probable cause" *Estiverne v. Esernio-Jessen*, 833 F.Supp.2d 356, 379 (E.D.N.Y 2011).

Plaintiff argues, for the first time on appeal, that ACS caseworker Moody failed to include information in the petition (i) regarding the father's fitness to take care of the child; (ii) regarding the father's role in taking care of the child for the six days after birth; (iii) that the father cooperated with ACS's instructions; (iv) that the father was willing to take care of the child; and (v) that ACS petitioned for removal from the father's custody despite no wrongdoings. According to the father, these alleged intentional or reckless omissions led the Family Court to improperly issue the removal order. Because this argument was raised for the first time on appeal, this Court may not consider it. *Green v. United* States, 13 F.3d 577, 586 (2d Cir. 1994).

19

Circumstances do not typically lean in favor of the court exercising its discretion to address new arguments on appeal where, as here, "those arguments were available to the parties below and they proffer no reason for their failure to raise the arguments below" *Mhany Mgmt. v. Cnty. Of Nassau*, 819 F.3d 581, 615 (2d Cir. 2016). Nowhere in the complaint, amended complaint, or summary judgment papers does plaintiff identify any of the aforementioned omissions or misrepresentations regarding the petition to the Family Court. Accordingly, this Court should reject plaintiff's attempt to now assert challenge to the authenticity of the petition that the Family Court relied upon.

Even if it was preserved for appeal, it should be rejected as conclusory and unsupported. Even now, plaintiff fails to assert that even if the Family Court had been provided with this information, it would have determined that child should be returned to his father's care. Plaintiff merely points to the fact that the neglect petition was filed against the mother and that relevant facts pertaining only to her fitness were included. That is of no moment to a determination that the petition for removal was intentionally or recklessly false, because information regarding plaintiff was not required to file the neglect petition. Under the New York Family Court Act § 1017(a), the Court shall direct the local agency to locate any non-respondent parent of the child. Under § 1017(c)(i), "the Court shall determine whether there is a non-respondent parent, relative or suitable person with whom such

20

child may appropriately reside." In this matter, a preliminary hearing took place, no non-respondent parent was located with whom the child could safely reside, and the removal order was then signed. Because plaintiff lived with the mother, who had serious issues that put the child at risk, and it was determined that that the father could not safely keep the child from the mother, the Family Court concluded that plaintiff was not a suitable person with whom the child should reside [JA.28, 156].

Plaintiff therefore cannot rebut the presumption of probable cause created by the removal order, as he could not show that the petition for removal was intentionally or recklessly false. The removal petition did not require the inclusion of the father's information. Moreover, following the preliminary hearing, the Family Court confirmed that plaintiff was not suitable to take care of the child [JA.156].

## POINT IV

## AMAR MOODY WAS PROPERLY GRANTED QUALIFIED IMMUNITY

### A. The District Court Properly Granted Amar Moody Qualified Immunity as his Actions were Objectively Reasonable

The District Court correctly granted ACS caseworker Moody qualified immunity. Qualified immunity shields government employees from civil liability under §1983 claims if "(1) their conduct did not violate clearly established rights of which a reasonable person would have known or (2) it was objectively reasonable to believe that the acts did not violate these clearly established rights." *Ogunkoya v Cty. Of Monroe*, 2020 U.S. Dist. LEXIS 118580, *30 (2d Cir. 2020); *see also Young*

21

*v. County of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998); *Soares v. Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993). Most relevant, this Court has held that there is substantial protection for caseworkers as protective services must choose between difficult alternatives. *Estate of Keenan v. Hoffman-Rosenfeld*, 833 Fed. Appx. 489, 491 (2d Cir. 2020); *Van Emrik v. Chemung County Dep't of Soc. Servs.,* 911 F.2d 863, 866 (2d Cir. 1990).

In *P.P. v. City of New York*, the defendants were individual social and case workers employed by non-profit corporations that provided foster-care services pursuant to a contract with the City of New York. No. 13 CIV. 5049 CM FM, 2014 WL 4704800 (S.D.N.Y. 2014). The district court explained that, in contrast to private prison operators whose profit motives "can be counted upon to draw the most talented candidates," private foster-care homes would have a harder time recruiting "talented candidates to be social workers (an already thankless job) if those employees were exposed to § 1983 liability without the safe harbor of qualified immunity." *Id.* at 19.

The reasonableness of the acts are to be analyzed through the lens of whether "officers of reasonable competence could disagree on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995). In this matter, the District Court properly considered the child's mother's ACS history and plaintiff's circumstances and questions of paternity to determine whether an officer of

22

reasonable competence could disagree with Moody's actions [SPA.43-44]. And the Court properly determined that there would be no disagreement that Moody's actions in removing the child violated any established rights of the father [SPA.44].

For the foregoing reasons, and also because plaintiff did not oppose qualified immunity in the District Court, the Court properly granted Moody qualified immunity.

## POINT V

### THE DISTRICT COURT PROPERLY DISMISSED THE PROCEDURAL DUE PROCESS CLAIM AS TIME-BARRED

Plaintiff alleges that their claim is not time barred pursuant to *Lucente*, however this is not true. The Court held that for the continuation violation doctrine to be triggered a plaintiff must "allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy" *Lucente v. Cty. Of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020) (citing *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013). The District Court applied the proper standard correctly determining that, because the statute under which plaintiff's claims fell do not provide a specific statute of limitations, courts then "apply the statute of limitations for personal injury actions under state law." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013). Section 1983 claims filed in New York are "subject to a three-year statute of limitations." *Id.* However, when state law provides the statute of limitations for claims brought under § 1983, "federal law

23

determines when a section 1983 cause of action accrues." *Pearl v. City of Long Beach,* 296 F.3d 76, 80 (2d Cir. 2002). Federal Law states that claims under § 1983 "accrue when the plaintiff knows or has reason to know of the harm." *Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir. 1994).

A case with similar facts, cited by the District Court, held that loss of custody continued over time, compounding the pain to the plaintiff from the absence her children, did not flow from a series of continuing wrongdoings. *Williams v. Savory*, 87 F. Supp. 3d 437, 453 (S.D.N.Y. 2015). Given the claim against ACS caseworker Moody falls under § 1983, the three-year statute of limitations applies. Because plaintiff had reason to know of the harm when his child was removed from his custody, plaintiff was required, but failed, to commence this action against Moody within three years, or by March 8, 2020 [JA.2-3].

Therefore, even if this Court should find that the District Court improperly granted qualified immunity to Moody, the cause of action against him is nonetheless time-barred.

## CONCLUSION

The District Court's well-reasoned opinion should be affirmed by this Court. The record on appeal demonstrated that the District Court properly took judicial notice of the necessary Family Court documents, which demonstrated that the City undertook the proper procedural steps to remove the child under exigent

circumstances. The Court therefore correctly dismissed plaintiff's claims alleging due process violations and unlawful seizure, and correctly imputed qualified immunity to ACS caseworker Moody.

Dated: July 2, 2025

Respectfully Submitted

BLACK, MARJIEH, & SANFORD LLP

By:_____ӏuӏ'Ʋj gt{ń'Ʋcphqtf _____
       Sheryl Sanford, Esq.
       Attorneys for Defendants-Appellees
       100 Clearbrook Road, Suite 345
       Elmsford, NY 10523

25

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Local Rule 32.1(4) because this brief contains 5,784 words, excluding the parts of the brief exempted by F.R.A.P. 32(f).

This brief complies with the typeface requirements of F.R.A.P. 32(a)(5) and the type style requirements of F.R.A.P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point font.

Dated: July 2, 2025

Respectfully Submitted

BLACK, MARJIEH, & SANFORD LLP

By:_____ JuʼUj gt{ňʼUcphqtf _____
    Sheryl Sanford, Esq.
    Attorneys for Defendants-Appellees
    100 Clearbrook Road, Suite 345
    Elmsford, NY 10523

26